**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**                                   **Case Nos.:   4:10cr70/RH/CAS**
                                                **4:13cv195/RH/CAS**

**SHANE JONES,**

   **Defendant.**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum

of law, (docs. 134, 135), the Government's response thereto (doc. 143), and

Defendant's reply.  (Doc. 146).  Defendant has also filed a separate motion to

amend/correct his § 2255 motion and a memorandum in support, to which the

Government has responded and Defendant has replied.  (Docs. 144, 145 148, 149).

The Government also filed a supplemental response pursuant to court order and

Defendant replied.  (Docs. 156, 161, 165).  The case was referred to the undersigned

for the issuance of all preliminary orders and any recommendations to the district court

regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)

and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments

presented, it is the opinion of the undersigned that Defendant has not raised any issue

requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See*

Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant Shane Jones was charged in a two count indictment with conspiracy

to distribute and possess with intent to distribute 500 grams or more of a mixture and

substance containing cocaine ("Count One"), and a substantive count of possession

with intent to distribute five grams or more of cocaine base on a date certain ("Count

Two").  (Doc. 1).  The charges stemmed from Defendant's arrest after a controlled buy

between a confidential informant and co-Defendant Marcus Knight, who identified Jones

as his source of supply.  Jones was arrested in possession of 33.6 grams of alleged

cocaine base.  (Doc. 61).  The Government filed notice of its intent to seek enhanced

penalties based on Defendant's prior felony offenses, which it identified as including

three drug offenses and one charge of possession of a weapon by a convicted felon.

(Doc. 7).

On March 2, 2011, represented by CJA counsel Clyde Taylor, Defendant entered

a plea of guilty to Count Two of the indictment pursuant to a written plea agreement and

statement of facts.  (Docs. 60–63).  In exchange for Defendant's guilty plea on Count

Two, the Government agreed to dismiss the conspiracy charge.  A footnote to the plea

agreement noted that although the indictment charged Defendant with more than five

grams of cocaine base, for purposes of the plea and the potential application of the

---

[1]Detailed statements of facts describing the offense conduct are set forth in the
Statement of Facts in support of the plea agreement (doc. 61) and will be set forth herein
only as necessary for resolution of Defendant's claims.

mandatory minimum sentence pursuant to § 841(b)(1)(B)(iii), the Government asserted

that the offense conduct involved in excess of twenty-eight (28) grams of cocaine base,

which was the new threshold for the application of the minimum mandatory set forth in §

841(b)(1)(B)(iii).  (Doc. 62, at 1, n.1).  Despite this footnote, defense counsel advised

the court that dispute remained as to the kind and quantity of drugs, as his client

believed that 28 of the 33.6 grams was actually powder rather than crack cocaine.  (doc.

105 at 7--8).

A draft Pre-sentence Investigation Report (PSR) was prepared in anticipation of

sentencing, and both parties filed objections thereto before the final PSR was

completed.  (*See* docs. 76, 77, 78, 85).  In the final version of the PSR, Defendant was

held accountable for 33.6 grams of cocaine base, which corresponded to a base

offense level of 26.  (Doc. 85 at ¶ 22).  Because Defendant had two prior qualifying

felony offenses, he was classified as a career offender under § 4B1.1 of the guidelines,

which raised his offense level to 37.  (Doc. 85 at ¶ 28).  After a three-level adjustment

for acceptance of responsibility, Defendant's total offense level was 34.  (Doc. 85 at ¶¶

29, 30).  Defendant had 18 criminal history points, which equated to a criminal history

category of VI.   (Doc. 85 at ¶ 54).  The applicable guidelines range was 262 to 327

months imprisonment.

Both parties objected to the drug weight, and the defense also objected to

several paragraphs pertaining to Defendant's criminal history and the subsequent

impact of the Career Offender treatment (Doc. 85 at ¶¶ 106–119).  At sentencing, the

Government conceded that its objection did not make any difference with respect to

sentencing.  (Doc. 106 at 4).  The defense withdrew its objection to the identity of the

drugs, and accepted the base offense level of 26, although Defendant later complained

about this concession in his remarks to the court.  (*Id.* at 4–5, 30).

Defendant's criminal history was thoroughly discussed at sentencing.  Defendant

objected to the assessment of seven points for the convictions listed in paragraphs

44–46 of the PSR, two of which occurred in July of 2001 and one of which occurred in

July of 2002.   The court overruled the objection due to the intervening arrests, which

allowed each offense to count separately.  Defense counsel noted that after further

investigation, the assessment of points for the offenses in paragraphs 48 and 51 was

correct.  (*Id.* at 6–7).   Defense counsel cited national and district-wide sentencing

statistics and argued that Defendant's criminal history category grossly overstated the

seriousness of his criminal record, and that a 120 month sentence, rather than the 262

to 327 month range under the guidelines, was appropriate.  (*Id.* at 19–21).  Five of

Defendant's family members spoke in his behalf, as did he.  (*Id.* at 22–29).

After lengthy argument from both the Government and the defense, the court

found that Defendant's criminal history was properly calculated as a Category VI.  (*Id.* at

42).  However, the court found that classifying Defendant as a career offender based on

two drug-trafficking offenses that were committed within a two week period when he

was 19 years old overstated the seriousness of his prior criminal history.  (*Id.*).  The

court calculated that absent the application of the career offender guideline, Defendant's

guidelines range would have been 92 to 115 months.  The court stated that although

120 months was above the high end of that range, it was required to impose at least the statutory minimum mandatory term of 120 months.  (*Id.* at 43).

Clyde Taylor moved to withdraw after sentencing and Michael Robert Ufferman was appointed to represent Defendant on appeal.  (Doc. 93).  Defendant sent a letter to the court requesting copies of the plea and sentencing transcripts, and also asking that the drugs seized in his case not be destroyed until they could be tested. (Doc. 95). The court denied the motion, noting that the Defendant's motion had "put the Government on notice of the need to preserve the evidence" and that Defendant's new attorney could obtain the transcripts.  (Doc. 100).

On appeal, Defendant argued that his sentence must be vacated because of the Fair Sentencing Act of 2010.  He claimed that the district court did not find, and he did not admit, the quantity of crack cocaine necessary to support a ten-year mandatory minimum sentence for a defendant with a prior conviction under 21 U.S.C. § 841(b)(1)(B)(iii).  The Government acknowledged that the FSA applied to Defendant but also noted that Defendant conceded the drug quantity in the district court at sentencing, a position with which the Eleventh Circuit agreed.  (Doc. 121 at 3).  The appellate court rejected his argument that his sentence was improperly enhanced because the § 851 notice incorrectly described two of his prior convictions, finding that the notice was "sufficiently clear about 'the government's intent.'" (*id.* at 5).  Finally the court declined to address Defendant's challenge to the validity of one of the convictions identified in the § 851 notice, because only one conviction was needed to support the mandatory minimum, and Jones had not challenged the validity of any of the other three

convictions.  His sentence was thus affirmed.  (Doc. 121).  The Supreme Court of the United States denied Defendant's petition for a writ of certiorari on February 21, 2013. (Doc. 129).

Defendant's § 2255 motion was timely filed pursuant to the prison mailbox rule on April 8, 2013.  He filed an amended motion in June of 2013 in which he raises myriad claims of ineffective assistance of trial and appellate counsel.   The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Legal Standards

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who is actually

innocent . . . ."

The law is well established that a district court need not reconsider issues raised

in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United

States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340,

1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot be

re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a

particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16

(1963) ("identical grounds may often be proved by different factual allegations . . . or

supported by different legal arguments . . . or couched in different language . . . or vary

in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.  Lynn,

365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn, 365

F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a

section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is,
alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S.
at 622 (citations omitted).  To show cause for procedural default, a defendant must
show that "some objective factor external to the defense prevented [him] or his counsel
from raising his claims on direct appeal and that this factor cannot be fairly attributable
to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of
ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct
appeal and are properly raised by a § 2255 motion regardless of whether they could
have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503
(2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to
prevail on a constitutional claim of ineffective assistance of counsel, a defendant must
demonstrate both that counsel's performance was below an objective and reasonable
professional norm and that he was prejudiced by this inadequacy.  Strickland v.
Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000);
Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part
test also applies to guilty pleas.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing
Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  In applying Strickland, the court may dispose
of an ineffective assistance claim if a defendant fails to carry his burden on either of the
two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326
(11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court

need not address the performance prong if the defendant cannot meet the prejudice

prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of

Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine

counsel's performance in a highly deferential manner and "must indulge a strong

presumption that counsel's conduct fell within the wide range of reasonable professional

assistance."  Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305,

1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's

conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that

petitioner was "not entitled to error-free representation").  Counsel's performance must

be evaluated with a high degree of deference and without the distorting effects of

hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel would have taken

the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301

(11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When reviewing the

performance of an experienced trial counsel, the presumption that counsel's conduct

was reasonable is even stronger, because "[e]xperience is due some respect."

Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807

(11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Counsel is not ineffective for failing to preserve or argue a meritless claim.

Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also*

Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to

preserve meritless Batson claim not ineffective assistance of counsel);  Lattimore v.

United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing

to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306

F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues

clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel

not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate

statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d

951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for

change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel

need not pursue constitutional claims which he reasonably believes to be of

questionable merit).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief, or even the fact that, a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); <u>Rosin v. United States</u>,786 F.3d 873 (11th Cir. 2015); <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  <u>Gordon</u>, 518 F.3d at 1301 (citing <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.   *See* <u>Hernandez v. United</u>

States, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *See* Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are ... based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004).  Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.  Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One:  Ineffective Assistance of Plea/Sentencing Counsel

Defendant contends that his appointed counsel Clyde Taylor was constitutionally ineffective and separates his claim into eight separate subparts.

Defendant first contends that counsel was constitutionally ineffective because he failed to take any steps to refute the Government's evidence regarding drug amount and type.  Defendant claims that from the inception of the proceedings, he advised his attorney that there was a problem with the Government's characterization of the drugs seized in this case.  Defendant states that despite counsel's assurances that he would resolve the issue, and counsel's request for a continuance for this very purpose (*see* doc. 79), counsel ultimately failed to follow through.

During the plea proceeding held on March 2, 2011, counsel pointed out to the court that there was an issue with respect to the quantity.  (Doc. 105 at 7).  Counsel stated that although he had nothing to dispute the DEA lab report at that time, he

wanted to "do a visual" on the drugs. (*Id.* at 8).  Counsel explained that there were two separate packages of drugs seized from Defendant, one weighing 5.6 grams and one weighing 28 grams.  It was Defendant's position that the 28 grams was powder rather than crack cocaine.  (*Id.* at 7–10).  Defendant admitted that he had possessed at least five grams of cocaine base, which at the time of the offense conduct was sufficient to trigger the minimum mandatory penalty set forth in § 841(b)(1)(B).  (*Id.* at 11).  Although there was some discussion about the retroactivity of the Fair Sentencing Act"s ("FSA") amendments to the threshold quantities required to impose the statutory mandatory penalties, the parties concurred that the law of the circuit at the time was that the FSA was not retroactive.  (*Id.* at 12–13).  The court also noted that, in any event, if the 28 gram quantity was also crack, the retroactivity question would be moot.  (*Id.*). Defendant admitted his understanding that the court had to sentence him to at least ten years in prison absent a substantial assistance motion.  (*Id.* at 13).  Sentencing was set for June 2, 2011.

After the PSR was disclosed to the parties, the defense moved to continue the sentencing date.  In support of the motion, the defense cited Defendant's desire that the 28 gram package of drugs be tested by an independent laboratory to determine whether it contained compressed/formerly wet powder cocaine rather than cocaine base, and noted that CJA funds were available for testing.  (Doc. 79).  No other basis for a continuance was offered.  The court granted the motion and rescheduled sentencing for July 14, 2011.  (Doc. 80).

At sentencing, defense counsel noted that "at one point in time [the defense was] looking at following up and possibly doing testing" of the controlled substance seized from Defendant at the time of his arrest to determine whether it was cocaine or cocaine base. (Doc. 106 at 4). Counsel then stated that "at this point in time [the defense was] accepting for purposes of sentencing that which is found in the DEA lab reports out of Miami and as reflected in the PSR." (*Id.* at 4–5).

During Defendant's allocution, it became clear that despite the representation of his attorney, Defendant still had not accepted the Government's calculation of the drug quantity. Defendant stated to the court: "I don't know if you really looked over the file, this was a powder deal. So that was the issue that I wanted to bring up, you know, with my attorney; that he never got the actual drugs tested again, when there was a question of it, and I felt like it was relevant; because, if it comes back testing that it's powder cocaine or non-crack cocaine base . . . I wouldn't have a minimum mandatory. . ." (Doc. 106 at 30). Defendant also argued that "since the new case that came out with the Fair Sentencing Act, if the 28 grams comes out to be powder, I wouldn't have a minimum mandatory." (*Id.*).[2] There was no further discussion of this issue at sentencing, as the focus shifted to Defendant's criminal history and whether he could or should be classified as a career offender. (*Id.* at 30–43).

---

[2]Defendant cited several cases during his remarks to the court, but he did not cite the Eleventh Circuit's decision in United States v. Rojas, 645 F.3d 1234 (11th Cir. 2011), which was decided just over a week before his sentencing. In Rojas, the court held that the FSA applied to defendants who committed crack cocaine offenses before the date of its enactment but who are sentenced thereafter.

In imposing sentence, the court accepted defense counsel's concession that

Defendant should be held accountable for 33.6 grams of cocaine base, which was "just

a little bit more than the amount that's the minimum to get this minimum mandatory."

(Doc. 106 at 43).  The quantity issue again was a factor on appeal, where the Eleventh

Circuit denied Defendant's challenge to his sentence under the FSA because of

counsel's concession to drug quantity and type at sentencing.  (Doc. 121 at 3).  The

court noted that the FSA would apply to Defendant, but in light of the quantity of crack

cocaine involved in Defendant's offense conduct, application of the FSA made no

difference in Defendant's sentence.

Even before his appeal was decided, Defendant requested that the evidence

seized in this case be preserved, arguing that the issue of drug type had never been

resolved.  (Doc. 95).   The court denied his motion because it had been filed pro se, but

it noted that Defendant's motion "has put the Government on notice of the need to

preserve the evidence."  (Doc. 100 at 1–2).

Defendant has claimed throughout the proceedings that only 5.6 of the 33.6

grams of controlled substance seized by law enforcement was cocaine base, and his

ineffective assistance of counsel claim rests on this belief.  Despite the results of tests

performed by the DEA, Defendant asserts that independent lab testing would have

shown that the remaining 28 grams of drugs, which was packaged separately from the

5.6 grams of admitted crack, was not crack cocaine.

There is scant, if any, actual record evidence as to the identity of the drugs.  The

DEA report does not appear to be part of the record, and there was no testimony about

the form of the packaging, the feel or appearance of the 28 gram sample, or by co-conspirators about the substance.  *See, e.g.*, <u>Berry v. United States</u>, 281 F. App'x 967, 969 (11th Cir. 2008) (Government presented testimony regarding visual appearance of drug, testimony from CI about the drugs he received, and evidence of monitored phone calls where Defendant mentioned crack); <u>Valenzuela v. United States</u>, 261 F.3d 694, 696–697 (7th Cir. 2001) (attorney's concession regarding identity of drugs was not unreasonable in light of evidence presented at sentencing including Defendant's taped admission that he distributed crack cocaine; also holding counsel was not constitutionally ineffective for failing to call an expert witness to refute government's contention that the drugs at issue were crack); <u>United States v. Dunbar</u>, 553 F.3d 48, 64 (1st Cir. 2009) (noting, on direct appeal, that there was ample evidence of defendant's involvement with crack cocaine rather than some other form of cocaine base, and witnesses testified that they had seen defendant cook cocaine into crack); <u>United States v. Eli</u>, 379 F.3d 1016, 1020 (D.C. Cir 2004) (noting that there "may be cases in which it will be difficult to determine whether a particular batch of 'cocaine base' falls within the definition of that term as it is used in the Sentencing Guidelines," but finding that the district court had conducted a thorough evidentiary hearing at which it considered whether a substance with a relatively lower purity and containing dimethyltrephalate and sodium borate could be classified as "crack cocaine").  The court notes, however, that the PSR reflects that Defendant was supposed to be involved in a deal involving powder cocaine, as Defendant himself stated at sentencing.  (*See* doc. 85, PSR at ¶¶11–12; doc. 106 at 30).  Furthermore, the Government acknowledges in its supplemental

response that at the time of the seizure, investigators suspected that the substance was cocaine powder based on both the fact that Defendant was supposed to be involved in a transaction for the sale of cocaine and the physical appearance of the substance. (Doc. 161 at 1–2; *see also* doc. 165 at 17).

If Defendant is correct and the 28 gram package of drugs contained powder, rather than crack cocaine, both the statutory penalties and the guidelines calculations, including the career offender scoring, would have been affected.  Due to the retroactive application of the FSA, if the substance were powder cocaine, Defendant's sentence would have been governed by § 841(b)(1)(C) in lieu of § 841(b)(1)(B), and he would have avoided the application of a statutory mandatory minimum penalty.  The applicable guidelines range would also have been significantly lower.  By this court's calculations, the marijuana equivalent of 28 grams of powder cocaine plus 5.6 grams of crack cocaine would have been just over 25 kilograms of marijuana,[3] corresponding to a guidelines base offense level not of 26, but rather of 18 if calculated pursuant to the 2011 Sentencing Guidelines, or 16 under the current version of the guidelines.[4]

---

[3]After the passage of the FSA, pursuant to the drug equivalency table in § 2D1.1, one gram of cocaine is the equivalent of 200 grams of marijuana, and one gram of crack cocaine is the equivalent of 3,571 grams of marijuana (rather than 20 kilograms of marijuana as it was at the time of Defendant's sentencing). Twenty-eight grams of cocaine would thus equate to 5,600 grams of marijuana, and 5.6 grams of crack cocaine would be the equivalent of 19,997.6 grams of marijuana, for a total of 25,597.6 grams.

[4]Under the pre-FSA, 2010 version of the guidelines, as noted by counsel in a letter to his client, Defendant's base offense level was the same regardless of whether the marijuana equivalency was used.  (*See* doc. 165 at 17).

The Government did not squarely address Defendant's assertion that counsel was constitutionally ineffective because he did not secure independent testing of the 28 gram package of drugs in its initial response.  Even counsel's affidavit appeared to misconstrue the crux of Defendant's claim. In paragraph 11 of his affidavit, Mr. Taylor states that he "was convinced any testing would show crack cocaine in the 5.6 gram package."[5]  (Doc. 143, Exh. D at 2).  As noted above, Defendant himself has never denied that the smaller of the two packages contained cocaine base.  It was the identity of the drugs contained in the 28 gram package that he contested.  Counsel states in his affidavit that he "made a strategy (sic) decision to leave the weight/content of the cocaine alone, and so stated at sentencing."  This decision is an apparent reversal of counsel's previously stated intent to secure independent testing, and a decision that appears to have been against his client's wishes.

In its initial response, the Government also relied on the statement in counsel's affidavit that the career offender scoring trumped the issue of drug weight.  (Doc. 143, exh. D at 1).  This position is weak in two respects.  First, a Defendant's career offender classification is driven by the statutory penalties applicable to his case.  If Defendant were held accountable for less than 28 grams of cocaine base, his penalties would be calculated under 21 U.S.C. § 841(b)(1)(C).  With a statutory maximum penalty of 30

---

[5]Counsel continued on to say that "even if weights were reduced, the career offender scoring would put Mr. Jones well above 120 months," again neglecting to acknowledge the district court's finding at sentencing that the career offender enhancement overrepresented the seriousness of Defendant's past offenses and  the should not apply to Defendant. (*See* Doc. 106 at 42).

Case Nos.: 4:10cr70/RH/CAS; 4:13cv195/RH/CAS

years under § 841(b)(1)(C) given Defendant's prior conviction, his career offender level would have been 34 rather than 37 pursuant to § 4B1.1 of the Sentencing Guidelines.

Additionally, the career offender guideline ended up having no effect on Defendant's sentence.  It is true that the Final PSR and the Statement of Reasons reflect the application of the § 4B1.1 career offender enhancement.  (Doc. 85, PSR, ¶ 28; doc. 92).  However, at sentencing, the district court found that although Defendant technically qualified as a career offender, classifying him as such based on two drug-trafficking offenses that were committed within a two week period when he was 19 years old overstated the seriousness of his prior criminal history.  It therefore sentenced him without regard to this enhancement, meaning that drug quantity and type were the primary factors directing Defendant's sentence.  (Doc. 106 at 42–43).  For offense conduct involving 33.6 grams of cocaine base, the appropriate base offense level was 26.  After a three level adjustment for acceptance of responsibility, the applicable guidelines range was 92 to 115 months.  (*Id*. at 43).  The court sentenced Defendant slightly above that range, to the statutory mandatory minimum contained in 21 U.S.C. § 841(b)(1)(B).  (*Id*. at 43).  Had the 28 gram package been found to be powder cocaine, Defendant's total offense level of 15 (base offense level of 18, minus a three-level acceptance of responsibility adjustment), and criminal history category of VI would have yielded an advisory guidelines range of 41 to 51 months, assuming the career offender status did not apply.

In order to assist the court's analysis of this claim, the Government was directed to file a supplemental response, to which Defendant was allowed to respond.

In its response, the Government concedes that **if** the 28 gram package contained powder rather than crack cocaine, Defendant would be entitled to re-sentencing within a guidelines range of 188 to 235 months if career offender status applied, or 41 to 51 months if it did not.  (Doc. 161 at 9).  However, the Government argues that Defendant cannot establish that counsel's decision not to re-test the substance that Defendant insisted was powder cocaine was constitutionally deficient.

In order to establish that he was deprived of his right to constitutionally effective representation under Strickland, Defendant must establish both deficient performance and prejudice.  The Government argues that regardless of any arguments Defendant now makes, he Defendant cannot show prejudice because of the court's comments at sentencing that the sentence it imposed was the right sentence under all of the circumstances.  (Doc. 106 at 44).  This is somewhat speculative, as the district court's sentence was based on the facts and the record before it, and only it may say what it might have done if the guidelines had been calculated differently.

The independent laboratory testing Defendant has sought since entering his guilty plea would have provided persuasive, but not conclusory, evidence with respect to the question of prejudice. If the results of independent laboratory testing were to return as Defendant asserts they would, a third test might be necessary to resolve the conflict.  A second finding that the 28 gram package was cocaine base would obviously have put the issue to rest.  And, there is record evidence that Defendant admitted to his lawyer that the 28 gram package was indeed cocaine base.  Appended to Defendant's second reply is a May 18, 2011, letter to counsel in which Defendant states "I concede

that 28 grams I thought was powder and the remaining was crack," then continues on to request that the samples be re-weighed, not re-tested.  (Doc. 165 at 21).

The question of whether counsel's performance was constitutionally deficient is likewise subject to some debate, although ultimately it appears to have been a strategic decision.  As set forth above, the standard for establishing that counsel's performance was constitutionally deficient is a difficult one. It is not what the best lawyers would have done, or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson, 221 F.3d at 1180.  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quotation omitted). Strickland requires that this court consider, with an abundance of deference, "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  This court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  Id. at 689.  Again, to show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon, 518 F.3d at 1301 (citations omitted); Chandler, 218 F.3d at 1315.

Thus, to establish a violation of Strickland, Defendant must show that, under the circumstances of this case, counsel's decision to concede drug type and quantity, rather than have the sample re-tested, was below an objective standard of reasonableness,

and was so unreasonable that no competent counsel would have made the decision he

did.  Defendant states that despite his insistence from the beginning of the case that the

28 gram package was powder cocaine,[6] despite the DEA sending the drugs to

Tallahassee for retesting, despite counsel having CJA funds to complete independent

testing, despite counsel's filing a motion to continue sentencing for this specific purpose

and having over four months to do so, and despite having a willing professional in South

Florida to facilitate independent testing, counsel abandoned the issue with no apparent

justification and against the express request of his client.  (Doc. 165 at 10–11).

The record as expanded undermines Defendant's claim.  Counsel states in a

May 16, 2011, letter to his client that "in his experience with the DEA labs on cocaine

testing, they are pretty accurate, and I see no reason to think they made a mistake here,

especially since all the cops involved in this controlled buy, including the snitch, thought

it was for powder cocaine... they would not be trying to come up with crack."  (Doc. 165

at 17).  Defendant's assertion that his insistence that the drugs be tested was enough to

justify the testing (*see id.* at 11), but this is contradicted by his letter to counsel

containing the concession that both packages of drugs contained cocaine base.  (*Id.* at

21).  Furthermore, although the reason for counsel's decision not to test the 28 gram

package is apparent neither from the record of the sentencing proceedings nor from his

---

[6]Defendant claims that emails to his girlfriend after meetings with counsel prove that he told counsel that the 28 gram package was cocaine powder.  (*See* doc. 165 at 11, referencing emails contained at doc. 134-3 at 3, 5).  The court does not agree that these emails support this assertion.  Additional correspondence between Defendant and his attorney suggest that he believed that the 28 gram package contained cocaine base that was not crack, and that he mistakenly believed that such a substance would have been scored differently under the guidelines.  (Doc. 165 at 21).

affidavit, the same letter of May 16 from counsel to Defendant states in no uncertain terms that counsel was concerned about protecting Defendant's acceptance points "as opposed to blindly filing" everything Defendant wanted him to file. (Doc. 165 at 17–18). It thus appears from the record that in light of counsel's belief that it was highly unlikely that there had been an error in the DEA's testing of the 28 gram sample, and his client's concession that both samples were comprised of cocaine base, he made a strategic decision not to test the 28 gram sample and potentially risk Defendant's three level adjustment for acceptance of responsibility. Based on the record before the court, the undersigned cannot conclude that this tactic was one that no reasonable counsel would have taken or that it was patently unreasonable. Therefore, Defendant has not established that counsel's performance was below the standards set forth in Strickland, and he is not entitled to relief on this claim.

The second portion of Defendant's claim appears to be that counsel failed to insist that the district court make an independent factual finding, in light of the statement in the PSR that the issue of drug weight was unresolved and required court findings. (Doc. 85, ¶ 109). In light of the defense concession at sentencing, no court findings were necessary. Counsel was not constitutionally ineffective for not requesting any additional action from the district court in this regard.

Defendant next asserts that counsel was constitutionally ineffective for his failure to ascertain how or whether the Fair Sentencing Act applied to Defendant's sentencing. Defendant was sentenced on July 14, 2011. On July 6, 2011, the Eleventh Circuit held

in United States v. Rojas, 645 F.3d 1234 (11th Cir. 2011)[7] that the FSA applies to

defendants who committed crack cocaine offenses before its enactment but are

sentenced thereafter.  Therefore, in order to have been subject to a ten year mandatory

minimum, Defendant would have to have been held accountable for 28 grams of

cocaine base.  In light of counsel's concession that the offense conduct involved 33.6

grams of cocaine base, whether the FSA applied to Defendant was of no import.

Furthermore, the base offense level applicable to an offense involving 33.6 grams of

cocaine base remained unchanged from 2010 to 2011.  Pursuant to the 2010

guidelines, a base offense level of 26 was attributed to offenses involving from 20 to 35

grams of cocaine base.  In 2011, the same base offense level encompassed offenses

involving from 28 to 112 grams of cocaine base.

Defendant's fourth claim is that counsel allowed him to be sentenced on a drug

amount that was never admitted or proven beyond a reasonable doubt.  This is not the

standard of proof required at sentencing.  The Government has the burden of proving a

disputed fact at sentencing by a preponderance of the evidence.  United States v.

Philidor, 717 F.3d 883 (11th Cir. 2013) (citing Gupta, 572 F.3d 878, 887 (11th Cir.

2009)).  In this case, the defense concession alleviated the Government's burden.

Fifth, Defendant asserts that counsel was constitutionally ineffective because he

did not argue that drugs intended for personal use should be excluded from the

---

[7]Rojas was vacated and in United States v. Hudson, 685 F.3d 1260 (11th Cir. 2012),
the court noted that the Supreme Court had resolved the question by holding that the more
lenient mandatory minimums in the FSA apply to all defendants sentenced after the Act's
August 3, 2010 effective date.  Hudson, 685 F. 3d at 1260 (citing Dorsey v. United States,
132 S.Ct. 2321 (2012)).

sentencing calculations.  Defendant argues that the 28 gram package of what he

describes as cocaine powder was intended for sale, while the 5.6 grams of cocaine

base was part of Defendant's "binge" at the time of his arrest and was intended for

personal use.  He notes that counsel mentioned "personal use amounts" in his objection

to the PSR.  (Doc. 78 at 1).  In his affidavit, counsel suggests that he did not make this

objection to avoid jeopardizing Defendant's acceptance of responsibility credit.  (Doc.

143, exh. D).  This decision was not patently unreasonable, particularly given the fact

that excluding the 5.6 grams of cocaine base would not have altered the ten year

statutory mandatory minimum, which applies to offenses involving "28 grams or more"

of cocaine base.

Next Defendant asserts that counsel was constitutionally ineffective because he

did not request that Defendant's federal sentence run "fully, partially, or retroactively

concurrent to" his undischarged state sentence despite Defendant's specific requests

both prior to and during sentencing.  Defendant cites United States v. Smith, 101 F.

Supp.2d 332 (W.D. Pa. 2000) in support of his position, although that case held that the

proper avenue to challenge the BOP's denial of a request for a nunc pro tunc

designation to a state facility would be via a habeas petition pursuant to 28 U.S.C. §

2241   Even if the opinion in Smith supported Defendant's claim, it is not binding or even

persuasive authority in this court. Defendant has not shown that counsel was

constitutionally ineffective for his failure to raise this issue, and he is not entitled to relief.

Defendant's seventh allegation of constitutional ineffectiveness by

plea/sentencing counsel includes myriad claims.  Defendant contends that counsel

failed to do any pre-trial investigation, file any pre-trial or post-conviction motion, to

discuss the strengths and weaknesses of the case with him, or to do any pre-trial

research.  Defendant notes that only eight days elapsed between his first meeting with

counsel and the entry of his guilty plea, and he claims that counsel did no investigating

in the interim.  He also complains that counsel did not file a Rule 7 motion, or a motion

to suppress prior to the entry of his plea, or a Rule 34 motion after the plea.  Defendant

maintains that he only pleaded guilty because counsel had spent no time researching

his case, despite the fact that he "wanted to go to trial."  Finally, he claims that counsel

never told him the type of sentence he would be exposed to under the guidelines.

 Despite the complaints he now makes, Defendant informed the court under oath

at the rearraignment proceeding that he had had sufficient time to discuss his case with

counsel, that counsel had answered all his questions, that he was satisfied with

counsel's representation, and that he had no complaints at all.  (Doc. 105 at 19).  A

defendant's statements during a Rule 11 colloquy as well as any findings made by the

judge accepting the pleas constitute a formidable barrier in any subsequent collateral

proceedings.  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); Winthrop-Redin v.

United States, 767 F.3d 1210 (11th Cir. 2014) (citing Blackledge).   Solemn declarations

made under oath in open court carry a strong presumption of verity.  Blackledge, 431

U.S. at 73–74; Connolly v. United States, 568 F. App'x 770, 771 (11th Cir. 2014) (citing

Blackledge); Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1349 (11th Cir. 2010) (citing

Blackledge).  They are presumptively trustworthy and are considered conclusive absent

compelling evidence showing otherwise; the subsequent presentation of conclusory and

contradictory allegations does not suffice.  <u>Blackledge</u>, 431 U.S. at 73–74; <u>Winthrop-Redin</u>, 767 F.3d at 1216.  In fact, such allegations are subject to summary dismissal. <u>Winthrop-Redin</u>, 767 F.3d at 1216 (citing <u>Blackledge</u>, 431 U.S. at 74).  A defendant "bears a heavy burden to show his statements [under oath] were false."  <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988); <u>United States v. Green</u>, 275 F. App'x 941 (11th Cir. 2008); <u>United States v. Cardenas</u>, 230 F. App'x. 933 (11th Cir. 2007). Defendant's conclusory statement that he "wanted to go to trial" does not meet that burden, particularly in light of the factual scenario presented in this case wherein Defendant was actually "caught red-handed" as described by counsel in his affidavit.

Furthermore, Defendant's assertion that counsel never told him the type of sentence he would be exposed to within the guidelines does not warrant relief. Defendant admitted under oath at rearraignment that he had talked with counsel about the Sentencing Guidelines and how they might apply in his case, and he also indicated that he understood the court's explanation of why his "very experienced" attorney did not necessarily know what the guidelines calculations would be.  (Doc. 105 at 16). Regardless of what counsel may have told Defendant about his sentencing exposure under the Sentencing Guidelines, Defendant was advised at his rearraignment that he faced a maximum penalty of life in prison because of his prior convictions, as well as a ten year minimum mandatory.  (<i>Id.</i> at 11–13).  Defendant acknowledged his understanding of this, yet persisted in his guilty plea.  (<i>Id.</i> at 13).

Defendant also faults counsel for failing to file certain motions in his case, including a motion to suppress.  When counsel's alleged ineffectiveness involves a

failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious. *See* Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006).   Defendant offers no suggestion as to a viable legal basis for a motion to suppress.  Co-defendant Knight, who was arrested after participating in a controlled buy, identified Defendant as his source of supply and said that Defendant was in possession of drugs.  (Doc. 85, PSR ¶ 14).  Law enforcement agents who had followed Defendant from the scene of the controlled buy conducted a traffic stop on Defendant's vehicle and discovered 33.6 grams of controlled substances and a digital scale box in Defendant's vehicle.  (*Id.*).  Counsel was not constitutionally ineffective for his decision not to pursue a meritless motion to suppress.  *See* Freeman, 536 F.3d at 1233; *see also* Sneed, 496 F. App'x at 27;  Brownlee, 306 at 1066; Meeks, 216 F.3d at 961.

Defendant's assertion that counsel was constitutionally ineffective for his failure to file a Rule 34 motion is similarly without merit.  At the time of Defendant's plea, Rule 34 provided that the court must arrest judgment if the indictment does not charge an offense or the court does not have jurisdiction over the offense.  There was no viable basis for a Rule 34 challenge, and as such counsel's performance was not constitutionally deficient.

Defendant's final claim against his plea/sentencing counsel is that counsel failed to notify the Government, case agent, or proper authority that Defendant wanted to cooperate in hopes of receiving a substantial assistance motion.  Defendant claims that

upon counsel's advice, he wrote counsel a letter setting forth the information he had, but that counsel did not relay the contents of this letter to the Government.  Defendant states that he attempted to communicate directly with the Government about cooperation after sentencing, but he was transferred back to state prison and therefore "missed the opportunity" to cooperate as a result of counsel's actions.  Defendant explains in his memo that a debriefing session had been set up by AUSA Mountin, but his transfer precluded the meeting from taking place.  (Doc. 135 at 25).  A motion for a sentence reduction pursuant to Federal Rule 35 may be filed up to one year from sentencing, and it is not clear from Defendant's motion how counsel's inaction prevented Defendant from following up with the Government during the time frame for filing a Rule 35, irrespective of his custodial status.  Defendant has not established a violation of Strickland.

Ground Two:  Ineffective assistance of appellate counsel

As noted above, Defendant raised two issues on appeal: he claimed that the FSA should be applied to his case and he challenged alleged inaccuracies in the § 851 notice that precluded the application of the enhancement. Defendant now challenges appellate counsel's performance, contending that he should have raised myriad other claims including a challenge to the district court's jurisdiction, alleged violations of his fifth and sixth amendment rights, and an alleged violation of the ex post facto clause. The Government appears to have misread Defendant's claims, as it contends in its

memorandum that the positions argued by Defendant in his § 2255 motion are "in essence the *very* positions pursued and argued" on direct appeal.[8]

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985). To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.  Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008); *see* Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir.2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984)). To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court may consider the merits of the issues the defendant alleges counsel was derelict in not raising on appeal.  Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out

---

[8]The Government's brief also includes a confusing paragraph in which it states that Defendant has "failed to illustrate how the appellate issue he now complains of was not 'available' on direct appeal, when in fact the merits of the issue were reviewed and considered" and further states that since Defendant "cannot establish that his ground of error was 'unavailable' on direct appeal, this court may not consider it, since not only was the ground already raised, but he cannot show he has suffered actual prejudice."  (Doc. 143 at 14).  Defendant never contends that the grounds he now raises were not available. Rather, he contends that the grounds were available, and that counsel should have, but did not raise them.

weaker arguments").  Of course, appellate counsel is not ineffective for failing to raise

claims that are reasonably considered to be without merit.  <u>Brown v. United States</u>, 720

F.3d 1316, 1335 (11th Cir. 2013); <u>Shere</u>, 537 F.3d at 1311; <u>United States v. Nyhuis</u>,

211 F.3d 1340, 1344 (11th Cir. 2000) (citing <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291

(11th Cir. 1984).

        First, Defendant contends that appellate counsel failed to challenge the district

court's jurisdiction because the indictment charged a "non-existent" offense.  The Fair

Sentencing Act took effect on August 3, 2010.  It increased the statutory sentencing

scheme and increased the amount of cocaine base needed to trigger certain statutory

penalties.  Defendant was indicted on September 15, 2010 and charged in Count Two

with possession with intent to distribute more than five grams of cocaine base, in

violation of 21 U.S.C. § 841(b)((1)(B)(iii).  This was the quantity to which the district

court referred during the proceedings. (*See* doc. 105 at 9, 20).  Defendant notes that at

time of his indictment, the FSA had already taken effect, and a violation of the cited

provision required proof of possession of 28 grams or more of cocaine base.  He

characterizes the FSA as a full-scale repeal, rather than amendment of, existing drug

laws, and appears to assert that he should have been charged under the newly enacted

provisions of the FSA, irrespective of when the offense conduct occurred.  Defendant

claims that the fact that he was charged under the prior version of the statute deprived

the district court of jurisdiction over his case, and that counsel was constitutionally

ineffective for his failure to raise this issue on appeal.

At the time of Defendant's indictment, the retroactivity of the FSA had not yet

been established.  He was charged under the version of the statute that was in

existence at the time of his offense conduct, and under which he would have been

sentenced, absent the retroactive application of the FSA.  Until the Supreme Court

conclusively decided the issue of retroactivity in <u>Dorsey v. United States</u>, 132 S.Ct.

2321 (2012), courts still believed that the appropriate penalties were those in effect at

the time of the offense conduct. *See, e.g.* <u>United States v. McDaniel</u>, 489 F. App'x 946

(7th Cir. 2012) (discussing proper penalties based on law at time of offense conduct).

Appellate counsel notes in his affidavit that not only did he believe he could not raise a

jurisdictional challenge to the indictment in good faith, the claim now suggested by

Defendant was not raised by trial counsel and would have been subject to the difficult

"plain error" standard.  (Doc. 143, Exh. A at 3).  Defendant has not cited, and this court

has not found, any cases suggesting that his indictment under the statute in effect at the

time of his offense conduct was improper. Counsel was not constitutionally ineffective

for not pursuing this claim.

Defendant also complains that although the charge in Count Two was accurately

characterized in the Draft PSR as possession with intent to distribute 5 grams or more

of cocaine base, the final version of the PSR reflected the charge as possession with

intent to distribute 28 grams or more of cocaine base, which tracked the language of the

statute as amended.  (*See*, docs. 76, 85).  He asserts that counsel should have raised

this issue on appeal, as the probation officer overstepped her bounds in making this

adjustment.  Defendant has not established prejudice.  The PSR and the Judgment

reflected the new statutory terms under the FSA.  Defendant's offense conduct,

possession of 33.6 grams of cocaine base, was sufficient to support the application of

the prescribed penalties under either version of the statute.  Defendant's suggestion

that he did not receive the "benefit" of the FSA is misleading.  Depending on the

quantity of drugs attributed to him, he could have benefitted from the FSA.  The FSA

would have precluded application of the minimum mandatory only if Defendant's offense

conduct involved less than 28 grams of cocaine base.  Defendant's offense conduct

involved more than this amount and therefore he was subject to the ten year minimum

mandatory for offense conduct involving 28 grams or more of cocaine base under the

FSA, which was the same penalty that would have applied pre-FSA to conduct involving

five grams or more of cocaine base.  Counsel was not constitutionally ineffective for not

raising this issue on appeal.

Defendant next claims that counsel failed to challenge alleged violations of his

fifth and sixth amendment rights or an alleged Apprendi[9] violation. Defendant's

assertion that he was sentenced for a charge the grand jury never indicted him for in

violation of his fifth amendment rights is without merit.  Similarly, Defendant's assertion

that he was not aware of the charge against him until he pleaded guilty is unfounded.

The penalties explained to Defendant at his plea proceeding were the same penalties

he ultimately faced, even taking into account the application of the FSA.  Defendant's

reference to Apprendi is also misguided.  The Court in Apprendi held that "[o]ther than

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

---

[9]Apprendi v. New Jersey, 530 U.S. 466 (2000).

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  Apprendi is inapplicable both because   Defendant waived his right to a jury determination in any aspect of his case via his guilty plea, and because he was not sentenced in excess of any statutory maximum.   Appellate counsel was not constitutionally ineffective for his failure to raise these meritless issues on appeal.

Finally, Defendant contends that application of the statutory mandatory minimum violated the ex post facto clause.  Again, based on the quantity of drugs for which he was held accountable, the applicable statutory mandatory minimum was unaffected by the FSA. And, under different circumstances, the FSA would have reduced a defendant's sentencing exposure–the opposite of an ex post facto violation.  Appellate counsel's performance was not constitutionally deficient.

Ground Three: FSA allows for re-sentencing

In his motion to amend his amended § 2255 motion, Defendant asserts that he is entitled to relief pursuant to the Supreme Court's decision in Dorsey v. United States, 132 S.Ct. 2321 (2012) in which the Court definitively held that the FSA is retroactively applicable to defendants whose crimes preceded the effective date of the FSA but who were sentenced after that date.  As discussed thoroughly above, in light of the quantity of cocaine base attributed to Defendant, he falls within a very small margin of offenders for whom neither statutory nor guidelines amendments offer any relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The amended motion to vacate, set aside, or correct sentence (doc. 134),

including the amendment thereto (*see* doc. 145) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 30th day of September, 2015.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.